22 -2820

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| HAROLD JOHNSON, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| Plaintiff-Appellant, | |
| v. | No. 1:20-cv-1514 |
| STATEWIDE INVESTIGATIVE SERVICES, INC., a/k/a STATEWIDE GUARD, | Judge Sharon Johnson Coleman |
| Defendant-Appellee, | |

**BRIEF AND REQUIRED SHORT APPENDIX
OF PLAINTIFF-APPELLANT
HAROLD JOHNSON**

BARRY A. GOMBERG
BARRY A. GOMBERG & ASSOCIATES, LTD.
53 W. Jackson Blvd., Suite 1350
Chicago, Illinois 60604
(312) 922-0550
*Attorneys for Plaintiff-Appellant*

# CIRCUIT RULE 26.1  DISCLOSURE STATEMENT

Appellate Court No: _____22-2820_____

Short Caption: _____Johnson v. Statewide Investigative Service, Inc._____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ]  PLEASE CHECK HERE IF ANY IFNORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in this case (if the party
is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Harold Johnson, Plaintiff-Appellant _____

_____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Barry A.  Gomberg & Associates, Ltd. _____

_____

(3)  If the party or amicus is a corporation:

  (i)  Identify all its parent corporations, if any; and

  N/A _____

  (ii)  list any publicly held company that owns 10% or more of the party's or amicus'
    stock:

  N/A _____

_____

Attorney's Signature: _____s/Barry A. Gomberg_____     Date:_____

Attorney's Printed Name:  Barry A. Gomberg _____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes  X   No ___

Address: 53 West Jackson Blvd., Suite 1350 _____

    Chicago, Illinois  60604 _____

Phone Number:_____(312) 922-0550_____     Fax Number:  (312) 922-0066_____

Email Address:  gomberglaw@aol.com _____

i

**APPELLATE BRIEF**

**TABLE OF CONTENTS**

DISCLOSURE STATEMENT.............................................................................. i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF AUTHORITIES............................................................................... iii

JURISDICTIONAL STATEMENT...................................................................... 1

ISSUES PRESENTED........................................................................................ 1

STATEMENT OF THE CASE............................................................................. 2

SUMMARY OF ARGUMENT............................................................................ 4

ARGUMENT...................................................................................................... 6

     I.     STANDARD OF REVIEW........................................................ 6

     II.    THE DISTRICT COURT ERRED IN DETERMINIG
          THAT PLAINTIFF FAILED TO PRESENT SUFFICIENT
          EVIDENCE THAT HE WAS TERMINATED ON THE BASIS
          OF HIS AGE……………………….................................................... 6

          A.  PLAINTIFF DID NOT SUBMIT A "SHAM AFFIDAVIT"…………..8

          B.  FULL-TIME VS. PART-TIME EMPLOYEES………………………..11

          C.  AGE ANIMUS COMMENTS…………………………………………14

CONCLUSION.................................................................................................. 16

CIRCUIT RULE 25 CERTIFICATE...............................................,,,,,,,,,,,,,,,,,,,,, 17

CIRCUIT RULE 30(d) CERTIFICATE.............................................................. 17

CIRCUIT RULE 32 CERTIFICATE................................................................... 17

CERTIFICATE OF SERVICE............................................................................ 18

SHORT APPENDIX.......................................................................................... 19

## TABLE OF AUTHORITIES

**<u>Statutes</u>**

29 U.S.C. § 621, et seq........................................................................................ 1

28 U.S.C. § 1291 ................................................................................................. 1

Fed. R. Civ. P. 56(c)…………………………………………………………… 6

**<u>Cases</u>**

*Bagwe v. Sedgwick Claims Mgmt. Serv., Inc.,* 811 F.3d 866 (7th Cir. 2016),……………… 14

*Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017)………………………… 6

*Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994)……………………… 6

*Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997)…………………… 11,12

*Jones v. National Council of Young Men's Christian Assoc.*,
48 F.Supp.3d 1054, 1112 (N.D. Ill. 2014) (Tharp, J.)…………………………… 11

*Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997)…………………………… 6

iii

## JURISDICTIONAL STATEMENT

Plaintiff, Harold Johnson, brought suit against Defendant, Statewide Investigative Services, Inc., in the U.S. District Court for the Northern District of Illinois, Eastern Division, alleging disability discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 et seq.  Jurisdiction of the United States Court of Appeals arises under 28 U.S.C. § 1291 by virtue of the entry of the District Court of the Order dated September 19, 2022 by the Honorable Judge Sharon Johnson Coleman granting Defendant's Motion for Summary Judgment.

The Notice of Appeal was filed with the District Court on October 12, 2022.

## ISSUES PRESENTED FOR REVIEW

(1)     Did the District Court err in ruling that Plaintiff failed to establish that he was discriminated against on the basis of his age?

**STATEMENT OF THE CASE**

Harold Johnson is the victim of age discrimination.  He was approximately 77 years old when his employer summarily fired him. (APP 12, 16) In a desperate effort to cover up its discriminatory actions, Defendant claimed that it was merely eliminating Johnson's position as a "supervisor."  But Johnson was not a supervisor at the time of his termination.  In 2017, Defendant demoted Johnson to a guard and took away his two weeks of vacation.

As this Court may now be aware, Defendant claims that because Johnson still wore a white shirt, earned a mere $1 more than other guards at the Chamberlain School of Nursing ("Campbell Client Location"), and had an aged social media page that still contained a reference to being a "Chief Security Guard" at Defendant, that this must mean that Johnson was a supervisor. However, Johnson provides an abundance of evidence to refute Defendant's claims, including, but not limited to the fact, that Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told him in 2017 that he was no longer a supervisor, allowed Johnson to continue wearing a white shirt rather than go to the expense of buying blue shirts, and frequently over time called Johnson "Old Man", questioned him about the future length of his tenure at Defendant and telling Johnson that he was "getting up in age." (APP 17, 18) Additionally, there is evidence that within mere weeks of Johnson's termination, Defendant hired younger guards to work at the location that Johnson was working at when he was terminated. (APP 12, 13, 15, 16) Further, Plaintiff testified that he performed the same duties as the regular guards both before and after his demotion in 2017. (APP 12)  In fact, although he was referred to as a "supervisor" prior to his 2017 demotion, Johnson never performed tasks that were different from the regular guards. (APP 12)

After completion of discovery, Defendant filed a Motion for Summary Judgment which was fully briefed.  Plaintiff indicated that there were many material facts in dispute in this matter and, therefore, Summary Judgment should have been denied.  Said disputed material facts include without limitation the following:

- Whether Mike Barone, Defendant's Director of Operations, the decisionmaker and Johnson's supervisor referred to Hal Johnson as "Old Man"
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that he was "getting up in age"
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that it was time for him to retire
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that he would no longer be a supervisor but would become a regular guard as of 2017
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that he could continue to wear his white shirt after he was made a regular guard in 2017
- Whether Hal Johnson's duties from 2017 through the time of his termination were those of a regular security guard
- Whether Hal Johnson was the "liaison" with the client at the Campbell Client Location
- Whether Hal Johnson was responsible for training guards at the Campbell Client Location
- Whether Hal Johnson updated his Facebook page after he was made a regular guard at Defendant in 2017
- Whether Hal Johnson was terminated on February 4, 2019 because of his age
- Whether  Defendant's discriminatory conduct towards Hal Johnson was intentional and/or in reckless disregard for Johnson's rights under the law
- Whether  Defendant's discriminatory conduct towards Hal Johnson constituted willful indifference to Hal Johnson's rights.

Despite the numerous disputed material issues of fact identified by Plaintiff, on September 19, 2022, the Honorable Judge Sharon Johnson Coleman granted Defendant's Motion for Summary Judgment and dismissed Plaintiff's lawsuit. The Notice of Appeal was filed with the District Court on October 12, 2022 to review the dismissal of this lawsuit on Summary Judgment. (APP. 1)

## SUMMARY OF ARGUMENT

Plaintiff argues below that the District Court erred in deciding that Plaintiff failed to present sufficient evidence that he was discriminated against on the basis of his age. Plaintiff's supervisor, Mike Barone made age animus statements to Plaintiff, demoted Plaintiff from his supervisory position, refused to permit Plaintiff to transfer to a part-time position in lieu of termination, and then replaced Plaintiff with several part-time employees who were younger than Plaintiff by as many as 35 years.

Plaintiff did not submit a "sham affidavit" despite Judge Coleman's ruling to the contrary. Defendant did not complete Plaintiff's deposition even though it was given several opportunities to do so. By not completing said deposition, Plaintiff's counsel had no opportunity for Plaintiff to explain and/or expand upon his responses to the questions of Defendant's counsel during his deposition. Plaintiff's affidavit was his attempt to clarify his testimony and provide further explanation of his position on matters raised by Defendant's counsel during his deposition.

Additionally, the lower Court and the Defendant argued that Plaintiff could not compare himself to part-time employees. However, this is not a case of someone claiming that they are entitled to benefits of individuals in a superior position. Rather, Plaintiff was an ordinary guard, reporting to Mike Barone, who was replaced by at least four younger, less experienced individuals who would be paid only a $1 per hour less. What makes the comparison even more relevant is the fact that Plaintiff offered to reduce his hours to part-time rather than be terminated. Defendant refused to permit him to remain employed but instead hired younger employees and fired the 77 year old man.

4

Finally, the lower Court refused to give weight to the age animus comments made towards Plaintiff by his direct supervisor and decisionmaker, Mike Barone.  Instead, the Court discredited the statements because they were made in a restaurant rather than at the worksite.

**ARGUMENT**

**I.    STANDARD OF REVIEW**

This Court reviews the District Court's grant of summary judgment *de novo*. *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). To prevent summary judgment, "[t]he non-moving party *** must identify specific facts to establish that there is a genuine triable issue" and "show more than mere metaphysical doubt as to the material facts." *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). The entire record is to be examined in a light most favorable to the non-movant to determine whether the pleadings, admissions, affidavits and depositions on file reveal that no genuine issue of material fact remains and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**II.    THE DISTRICT COURT ERRED IN DETERMINING THAT PLAINTIFF FAILED TO ESTABLISH THAT HE WAS DISCRIMINATED AGAINST ON THE BASIS OF HIS AGE**

To prove discrimination under the ADEA, Plaintiff must establish that he suffered an adverse employment action that was motivated by discriminatory animus. See *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017) As acknowledged by the lower Court, in their Summary Judgment briefs, the Parties disputed whether Plaintiff suffered an adverse employment action.

In 2017, Defendant restructured its Campbell Client Location. (APP 11). At that time, Defendant took away Johnson's two-week vacation.  (APP 11). Johnson was told by his supervisor and decisionmaker, Mike Barone, that he was being demoted from his supervisor position to that of a regular guard.  (APP 12).

Johnson testified that all the former and current Chicago Police Officers, as well as Johnson, who worked security at the Campbell Client Location had the same duties and responsibilities. (APP 12).    Even when he was a supervisor, Johnson had the same duties and responsibilities as

the other guards, and no additional duties. (APP 12). Barone admitted in his deposition that Johnson performed the duties of a security guard as evidenced by the fact that Barone could not recall during his deposition how much extra time Johnson allegedly spent during his regular work-day doing supervisory activities. (APP 12).

Mike Barone knew approximately how old Hal Johnson was when he terminated him. (APP 12). Barone admitted that work performance was not the reason for Johnson's termination. (APP 12). Hal Johnson was terminated on February 4, 2019. (APP 12). He was 77 years old at the time of his termination. (APP 12). Johnson asked Barone if he could remain working as a guard, even if he was transferred to a different location or went part-time, but Barone refused to permit Johnson to remain in Defendant's employ. (APP 12).

On February 18, 2019, approximately 14 days after Johnson was terminated, Joseph Arroyo submitted an employment application with Defendant and was hired to work as a security guard at the same location (Campbell Client Location) Johnson was working on his termination date. (APP 12). Mr. Arroyo was an active Chicago Police Officer. (APP 12). Mr. Arroyo was born in 1978 and was approximately 41 years old when he was hired. (APP 12).

On February 19, 2019, approximately 14 days after Johnson was terminated, Samantha Lacina submitted an employment application with Defendant and was hired to work as a security guard at the same location (Campbell Client Location) Johnson was working on his termination date. (APP 12). Ms. Lacina was a current Chicago Police Officer. (APP 12, 13). Ms. Lacina was born in 1989 and was approximately 30 years old when she was hired. (APP 13).

On March 7, 2019, approximately 4 weeks after Johnson was terminated, Jacklyn Jiminez submitted an employment application with Defendant and was hired to work as a security guard

at the same location (Campbell Client Location) Johnson was working on his termination date. (APP 13). Ms. Jiminez was a current Chicago Police Officer. (APP 13). Ms. Jiminez was born in 1991 and was approximately 28 years old when she was hired. (APP 13).

On April 4, 2019, approximately 8 weeks after Johnson was terminated, Luis Kuszynski submitted an employment application with Defendant and was hired to work as a security guard at the same location (Campbell Client Location) Johnson was working on his termination date. (APP 13). Mr. Kuszynski was a retired Chicago Police Officer. (APP 13). Mr. Kuszynski was born in 1962 and was approximately 57 years old when he was hired. (APP 13).

Plaintiff filed a Charge of Discrimination against Defendant with the Illinois Department of Human Rights on or about March 12, 2019, claiming discrimination based on age discrimination. (APP 13).[1]

### A. Plaintiff did not submit a "Sham Affidavit"

Plaintiff **did not** submit a "sham affidavit" in response to Defendant's Motion for Summary Judgment. As indicated in Plaintiff's Response to Summary Judgment, Defendant unilaterally stopped Plaintiff's deposition before it was completed. The Magistrate Judge gave Defendant several opportunities to complete Plaintiff's deposition but it did not do so. In Plaintiff's Declaration submitted in opposition to Summary Judgment, Plaintiff explained again that Defendant stopped Plaintiff's deposition in the middle of the deposition, that Plaintiff was not able to provide all relevant, material facts regarding his case and his counsel could not ask questions of

---

[1] Plaintiff's original Charge of Discrimination included race discrimination but, after consideration, Plaintiff chose not to pursue it in his federal lawsuit.

Plaintiff after Defendant completed its questioning during his deposition because Defendant's counsel stopped it before its conclusion. (See APP. 26 and 27 - Declaration ¶¶ 3, 4, 5, 6, 7, and 8)

Plaintiff's counsel has the right to ask questions of his client to clarify his responses and/or to rehabilitate his client before the conclusion of his deposition. In the instant matter, counsel was not able to do so in the traditional manner because the deposition was cut short by Defendant and Plaintiff's counsel was not given the opportunity to question him after the questioning conducted by Defendant. As a result, Plaintiff provided a Declaration with his Response to the Motion for Summary Judgment that provided the salient facts that necessitated the submission of said Declaration, ie, as a means of eliciting testimony that would have come forward during the deposition had Defendant not prematurely ended Plaintiff's interrogation.

The purpose of the rule against giving weight to a "sham affidavit" is to protect the legal process and prevent a Party from eliciting testimony from a witness that contradicts sworn statements made during the witnesses' deposition specifically to defeat a Motion for Summary Judgment. But again, Plaintiff's deposition was never completed. Defendant abruptly and precipitately terminated the proceedings and never reconvened the deposition despite several opportunities given to it by the Magistrate Judge. As a result, Plaintiff is unduly prejudiced if he is not permitted to provide a full accounting of the facts in his matter. Plaintiff's Declaration was not an attempt to fabricate facts. Plaintiff's declaration permitted Plaintiff the opportunity to get into the record his explanation of the facts concerning age discrimination that he experienced at Defendant and the reasons for his termination. Said opportunity was denied during Plaintiff's deposition because Defendant unilaterally stopped and failed to reconvene Plaintiff's deposition. Defendant stated in its Reply to Plaintiff's Response in Opposition to Summary Judgment that "Plaintiff states he was 'unable to provide all relevant, material facts regarding my case.'

Declaration, par. 8" and therefore, "Plaintiff implicitly concedes that these facts are new facts not disclosed in discovery." Reply p. 4. (Dkt #90)  It was Defendant's counsel's questions that were new. For example, for the first time during his deposition, Plaintiff was asked about information contained in his Facebook page.  But before Plaintiff could fully address the content of his Facebook page, Defendant ended Plaintiff's deposition.  Had the deposition continued, Plaintiff's counsel would have followed up with questions concerning information from same.  The point is that Plaintiff tried to disclose the facts, but Defendant terminated Plaintiff's deposition before he could finish his testimony.

Because the Court did not specify in its Decision what statements it believed were allegedly contradictory and should, therefore, be stricken, Plaintiff can only assume that the Court believes that every fact identified by Defendant as allegedly new or contradictory was stricken.  Regarding Plaintiff's statements that he informed Mr. Barone that he was willing to reduce his hours, both Plaintiff's Answer to Interrogatory No. 12 and Declaration ¶7.1 indicate that he made said request. Had Plaintiff been permitted to complete his deposition testimony, counsel is confident that the deposition testimony would have reflected that Plaintiff requested that he be kept on as a part-time employee rather than be terminated.  (APP. 26)

As for Declaration ¶10, Defendant asked Plaintiff about his Facebook posting for the first time during Plaintiff's deposition.  (APP. 27). Plaintiff would have made said explanation reflected in his Declaration ¶10 had he had the opportunity to complete his deposition. (APP. 27).  The same is true about Declaration ¶11 wherein Plaintiff states that his Facebook page no longer reflects that Plaintiff is a Chief security officer at Defendant. (APP. 27). But, once again, Defendant ended the deposition and Plaintiff's counsel was not able to follow up with Plaintiff after the questioning by Defendant's counsel.

10

Finally, Defendant objected not only to the prior "new facts" in Plaintiff's Declaration ¶¶7.1, 10 and 11, but also objected that there was no foundation for Plaintiff's statements in Declaration ¶¶6, 7 and 11 because Defendant did not believe that Plaintiff had personal knowledge of communications between counsel. But because the Court made no mention of striking any statements for lack of foundation, counsel can only assume that Declaration ¶¶6, 7, and 11 were not stricken for lack of foundation. By not concluding the Deposition, Defendant has used it as a weapon – a weapon which should not be used by the Court - to seek to preclude facts from coming because Defendant just walked away during the middle fo Plaintiff's deposition.

Plaintiff told the decisionmaker (Barone) that he would be willing to work part-time. Knowing that, the decisionmaker fired Plaintiff anyway and hired part-time replacements. And to compound matters further, the Defendant canceled the deposition in the middle, did not continue said deposition, thus not allowing all facts to come out. Defendant used this as a weapon to circumvent Plaintiff from providing additional facts and in order to succeed in its Motion for Summary Judgment.

Plaintiff respectfully requests that this Honorable Court give full weight to Plaintiff's statements in his Declaration given Defendant's actions and, as a result, reverse the lower Court's decision, deny Defendant's Motion for Summary Judgment, and remand this matter for Trial.

### B. Full-Time vs. Part-Time Employees

This Court stated that it was 'well-settled that "full-time employees are simply not similarly situated to part-time employees," especially when the part-time employees receive less pay.' In making this statement, the Court cited to both *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997) and *Jones v. National Council of Young Men's Christian Assoc.*, 48 F.Supp.3d 1054,

1112 (N.D. Ill. 2014) (Tharp, J.). It is important to note, however, that there are several material differences between *Ilhardt* and *Jones* and the instant matter.

First, the Courts in *Ilhardt* and *Jones* state that "part-time employees are **generally** not similarly situated to full-time employees." *See Ilhardt v. Sara Lee Corp., 118 F.3d 1151, 1155. (emphasis added). In* both *Ilhardt* and *Jones*, the Plaintiffs were part-time employees who were attempting to compare themselves to full-time employees who received more benefits than Plaintiffs and were able to work more hours for Defendant. In *Ilhardt*, the Plaintiff was terminated when the employer was downsizing. And in *Jones*, the Plaintiff complained about not receiving the same pay as full-time employees. Here, Mr. Johnson was a full-time employee who requested that he be permitted to stay on as a part-time employee. The Court did not address this point in its decision. Rather than convert Mr. Johnson to part-time status so that he would not lose his position, Defendant terminated Plaintiff. As stated above, there is no contradiction in Plaintiff's Answers to Interrogatories and Declaration ¶7.1 regarding Plaintiff offering to reduce his work hours. He inquired about being permitted to be part-time and Defendant knew it. Regardless of the fact that Plaintiff asked to be part time, Defendant terminated Plaintiff's employment and soon thereafter had significantly younger, less experienced individuals performing Plaintiff's identical duties at the same work location. There is no contradiction in the fact that he did ask. This is a significant fact as Mr. Johnson had already been demoted to a regular guard position and was readily agreeable to staying on in a reduced hourly capacity, something that Defendant was already seeking. The important difference between Plaintiff and Defendant's new hires is not the number of hours that they worked but that there was a great disparity between Plaintiff's age (77 and the oldest employee of Defendant) and the ages of the new hires (41, 30, 28 and 57). Furthermore, not long after his termination, Johnson returned to his former workplace and saw a new employee sitting at his

former desk at the Campbell Client Location. Said employee wore a name tag with "Johnson" on it and was much younger than Plaintiff.

Additionally, the security guards hired by Defendant following Plaintiff's termination were all comparable to Plaintiff in many material aspects. They all performed the identical job duties of security guard as Plaintiff had performed, they worked at the same job location where Plaintiff had worked and they all reported to Mr. Barone (Plaintiff's supervisor and the decisionmaker in this matter).

It is also especially important to note that Defendant claims that Plaintiff was terminated **not because he was full time**, but because it decided to eliminate the supervisor position at that particular location. Plaintiff has noted that he was not a supervisor at the time of his termination. The lower Court already determined that whether Plaintiff was a supervisor was a material issue of fact in dispute. Therefore, if Plaintiff is correct and a jury finds that he was not a supervisor, then it can also find that Defendant's reason for terminating Plaintiff is a pretext for discrimination, i.e., because of Plaintiff's age. But the Court did not address the fact that Plaintiff requested that he be permitted to stay working for Defendant on a part-time basis. This is a very significant point. Plaintiff was performing the identical duties as the other, younger guards who replaced Plaintiff. Plaintiff wanted to remain in the employ of Defendant, even if that meant reduced hours and pay (and Plaintiff notified Defendant of this fact). According to Mr. Barone (Plaintiff's supervisor and the decisionmaker), Plaintiff had no performance issues. There is no non-discriminatory reason why Plaintiff was terminated. A jury should be permitted to hear the facts and make a determination as to whether Plaintiff's termination was a pretext for discrimination.

13

Based upon the foregoing, Plaintiff respectfully requests that this Honorable Court reverse the lower Court's decision, deny Defendant's Motion for Summary Judgment, and remand this matter for Trial.

### C.     Age Animus Comments

The Court has also relied on *Bagwe v. Sedgwick Claims Mgmt. Serv., Inc.,* 811 F.3d 866 (7th Cir. 2016), in determining that the age animus comments made by Mr. Barone to Plaintiff were isolated remarks and should hold no weight because they were not made contemporaneously with Plaintiff's termination and the remarks were made in an allegedly "social" setting.

According to the Court in *Bagwe*, "When considering whether a remark is discriminatory, [courts] also **consider** the context in which the remark was made." *Bagwe.,* 811 F.3d at 885 (emphasis added)  The cited language is not mandatory.  In fact, the Court has discretion to decide whether to rely on the fact that the ageist remarks were made in a setting other than the work location.  Here, Plaintiff described two situations when he and Barone met for lunch and discussed work, Plaintiff's age and how long Plaintiff intended to continue working for Defendant. (APP. 29 - Johnson Dep. p. 40:21-41:9)  These are discriminatory remarks that a reasonable jury could determine were indicative of Defendant's discriminatory intent when terminating Plaintiff.  There is no comment in either Plaintiff's deposition or Barone's deposition that their meetings were because they were "friends" meeting socially. There is no evidence that these were social meetings unrelated to work.  Rather, the fact that Plaintiff and Barone discussed work on these occasions suggest that said meetings were not "social."

Furthermore, *Bagwe* also states that statements made in a social setting are only "less likely" to have been discriminatory.  In a Motion for Summary Judgment,  the facts must be viewed in the light most favorable to the nonmoving party if there is a "genuine" dispute as to those facts.

Just because a statement is "less likely" does not mean that it must be automatically disregarded. This is especially true as Plaintiff and Barone discussed work and there is no other evidence that they met for reasons other than to discuss the Plaintiff's job.

Barone's ageist comments were not isolated. Barone's comments were also contemporaneous with Plaintiff's 2017 demotion from supervisor to regular guard. Defendant denies that Plaintiff was demoted, but this is a material issue of fact for a jury to decide.

In addition, according to Plaintiff, Barrone called him "old man" ***throughout his employment***. In 2017, Plaintiff met with Barone (Plaintiff's supervisor and the decisionmaker) who asked him about his retirement plans on more than one occasion. Shortly thereafter, Plaintiff was demoted from a supervisor to a regular guard. By February 2019, Defendant was terminating Plaintiff, not permitting him to transfer to a part-time position in order to avoid discharge, and hiring at least four younger employees to replace Plaintiff. There was no legitimate, non-discriminatory reason to terminate Plaintiff.

With all due respect, the Court did not take into consideration Defendant's primary defense - that it eliminated Plaintiff's supervisory position. But Plaintiff had already been demoted 18-24 months prior. Plaintiff was not performing supervisory functions at the time of discharge and his job was not "eliminated." Rather, Defendant hired several younger individuals to perform Plaintiff's duties even though Plaintiff was still capable of performing said duties, still wanted to perform said duties, had no performance issues and offered to accept a further demotion to a part-time position about which Defendant was aware. It is conceivable that a reasonable jury would determine that Defendant's proffered reason for terminating Plaintiff was pretextual and that Plaintiff lost his position as a result of his age.

Based upon the foregoing, Plaintiff respectfully requests that this Honorable Court reverse the lower Court's decision, deny Defendant's Motion for Summary Judgment, and remand this matter for Trial.

## **CONCLUSION**

Plaintiff presented a record replete with disputed issues of material fact in his Response to in Opposition to Summary Judgment, demonstrating that he was subjected to discrimination based upon his age. It is Plaintiff's belief that this Honorable Court's decision to grant Defendant's Motion for Summary Judgment was based upon mistake and/or a misunderstanding of the facts and/or the cited to case law. A reasonable trier of fact could conclude, based upon the facts in this matter, that Plaintiff was terminated on the basis of his age.

For each of the foregoing reasons, Plaintiff respectfully requests that this Honorable Court reverse the Decision of the District Court and set the matter for Trial.

Respectfully submitted,

HAROLD JOHNSON

By: s/Barry A. Gomberg
Attorney for Plaintiff-Appellant

Barry A. Gomberg
Barry A. Gomberg & Associates, Ltd.
53 W. Jackson Blvd., Suite 1350
Chicago, IL 60604
(312) 922-0550 Tel.
(312) 022-0066 Fax.
gomberglaw@aol.com

**CIRCUIT RULE 25 CERTIFICATE**

Barry A. Gomberg, attorney for Appellant, pursuant to Seventh Circuit Rule 25, certifies that a digital version of this brief, in Portable Document Format (*.pdf), has been uploaded on March 13, 2023 to the Court's website at http://www.ca7.uscourts.gov and thus served on all counsel of record.

s/ Barry A. Gomberg
Barry A. Gomberg

**RULE 30(d) CERTIFICATE**

Barry A. Gomberg, attorney for Appellant, certifies that all of the materials required by parts (a) and (b) of this rule are included in the appendix.

s/ Barry A. Gomberg
Barry A. Gomberg

**RULE 32 CERTIFICATE**

Barry A. Gomberg, attorney for Appellant, certifies that this brief complies with Fed.R.App.P. 32 in that the brief totals 4,990 words.

s/ Barry A. Gomberg
Barry A. Gomberg

**CERTIFICATE OF SERVICE**

I, Barry A. Gomberg, counsel for the Plaintiff-Appellant, Brian Boc, hereby certifies that on Appellate Brief and Short Appendix of Plaintiff-Appellant, were served upon counsel for the Defendant-Appellee, Able Engineering Services via electronic service on March 13, 2023 and by depositing two copies in the U.S. Mail, first-class postage prepaid, addressed as follow within 7 days of acceptance of the Appellant's Brief:

Megan Lopp Mathias
Lopp Mathias Law
1030 West Chicago Avenue
Chicago, Illinois 60642

Dated: March 13, 2023

By:  s/Barry A. Gomberg
                            Attorney for Plaintiff-Appellant

Barry A. Gomberg
Barry A. Gomberg & Associates, Ltd.
53 W. Jackson Blvd., Suite 1350 Chicago, IL 60604
(312) 922-0550 Tel.
(312) 022-0066 Fax.
gomberglaw@aol.com

# SHORT APPENDIX

# TABLE OF CONTENTS

Memorandum Opinion and Order Granting Defendant's
Motion For Summary Judgment docketed March 25, 2022……………………............. APP  1

Judgment in a Civil Case docketed March 25, 2017………………….......................... APP  8

Plaintiff's Memorandum of Law in Opposition to Summary Judgment (Dkt #87)...……… APP  9

Harold Johnson's Declaration (Dkt #88.2)...…………………………………………… APP 26

Harold Johnson Deposition Excerpt (Dkt #88.1)………………………………………. APP 29

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD JOHNSON, | ) | |
| | ) | Case No. 20-cv-1514 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| STATEWIDE INVESTIATIVE SERVICES, | ) | |
| INC., a/k/a STATEWIDE GUARD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Harold Johnson brings this lawsuit against his former employer defendant Statewide Investigative Services, Inc. ("Statewide") alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Before the Court is Statewide's motion for summary judgment brought under Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Statewide's motion.

**Background**

In July 2011, Statewide, which is in the business of private security services for residential and commercial purposes, hired Johnson as a supervisor. At the time Johnson completed his employment application, he was a retired Chicago police officer and 69-years-old. During his employment, Johnson worked at Statewide's client location of 3300 N. Campbell in Chicago, Illinois ("Campbell location"), where a school was located.

Statewide terminated Johnson's employment on February 4, 2019. Statewide contends it did so because the supervisor position at the Campbell location was eliminated. Undisputed evidence shows that between February 2019 and December 2021, there were only two Statewide locations that had supervisors and Statewide had not hire another supervisor for the Campbell location since

February 2019.  Johnson, however, maintains he was not a supervisor at the time Statewide

terminated his employment and that Statewide terminated his employment based on his age.

Johnson points to his deposition testimony to support his age discrimination claim.  More

specifically, he testified that in April 2017, while they were having lunch at a restaurant in the

suburbs, Statewide's Director of Operations Michael Barone asked him how old he was and how

long he would remain working, to which Johnson answered he would like to work a few more years.

Barone, like Johnson, was a former Chicago police officer before he began working for Statewide

and was 64-years-old at the time of Johnson's termination.  Again, in September 2017, while Barone

and Johnson were dining at a restaurant in Chicago, Barone asked Johnson, "you're getting on in age

now, how much longer are you going to put up with this shit?"  Johnson also testified that Barone

called him an old man on several occasions.

After his termination, specifically in March 2019, Johnson filed an IDHR/EEOC Charge

asserting Statewide terminated his employment based on his age in violation of the ADEA.  On

December 10, 2019, the EEOC issued a right to sue letter.  Johnson filed a timely complaint on

March 2, 2020.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a);

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A

genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

Ct. 2505, 2510, 91 L.E.2d 202 (1986).  When determining whether a genuine dispute as to any

material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of

the nonmoving party.  *Id.* at 255; *Holloway v. City of Milwaukee*, 43 F.4th 760, 765 (7th Cir. 2022).

**Discussion**

The ADEA protects workers who are 40 years of age and older from age-based employment discrimination. 29 U.S.C. § 623(a)(1). Under the ADEA, a plaintiff must establish that his age was the but-for cause of his employer's adverse employment action. *Kleber v. CareFusion Corp.*, 914 F.3d 480, 486 (7th Cir. 2019) (en banc). At summary judgment, a plaintiff may carry this burden by presenting direct or circumstantial evidence, or, in the alternative, he may proceed under the *McDonnell Douglas* burden-shifting method of proof. *See Marnocha v. St. Vincent Hospital & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021).

Here, the parties approach Johnson's claim under the *McDonnell Douglas* method of proof. Under this burden-shifting framework, Johnson must present evidence creating a genuine issue of material fact that: (1) he was a member of a protected class; (2) he was meeting Statewide's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not members of his protected class were treated more favorably. *Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022). If Johnson meets each of these prima facie elements, the burden shifts back to Statewide to set forth a legitimate, nondiscriminatory reason for Johnson's termination. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022). If Statewide makes this showing, the burden then shifts back to Johnson to produce evidence that Statewide's reason is pretext for discrimination. *Chatman v. Board of Educ. of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021).

Before examining the parties' arguments, the Court addresses Statewide's assertion that Johnson contradicts his December 2020 deposition testimony in his March 2022 declaration filed in tandem with his response to the present summary judgment motion. The Seventh Circuit considers such contradictions under what it calls the "sham-affidavit" rule, which prohibits a party from submitting an affidavit or declaration that contradicts that party's prior deposition testimony. *See Perez v. Staples Contract & Commercial LLC*, 31 F.4th 560, 569 (7th Cir. 2022). "The goal of the rule is

APP.3

to preclude the manipulation of testimony to avoid an adverse summary-judgment ruling." *Id.* The "organizing principle of our sham-affidavit practice is simply stated: a *genuine* issue of material fact cannot be conjured out of nothing." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (emphasis in original). With this in mind, the Court disregards certain averments in Johnson's March 2022 declaration that contradict his December 2020 deposition testimony.

Turning to Johnson's prima facie case, the Court examines whether Johnson has fulfilled the similarly situated element because it is dispositive. To be similarly situated, a comparator must be directly comparable to the plaintiff in all material respects, although precise equivalence is not required. *Bless v. Cook Cnty. Sheriff's Office,* 9 F.4th 565, 575 (7th Cir. 2021). "The purpose of the similarly situated prong is to 'eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus.'" *Marnocha*, 986 F.3d at 719 (citation omitted).

Johnson presents evidence that Statewide hired four younger security guards for the Campbell location after his employment was terminated in February 2019. Unrefuted evidence in the record indicates that these security guards worked approximately eight to sixteen hours a week, on average. (R. 88-3, 12/2/20, Barone Dep., at 95). Moreover, it undisputed that Johnson was the only full-time employee at the Campbell location, and, as a full-time employee, Johnson was paid more than the part-time employees. It is well-settled that "full-time employees are simply not similarly situated to part-time employees," especially when the part-time employees receive less pay. *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997); *see also Jones v. National Council of Young Men's Christian Assoc.,* 48 F.Supp.3d 1054, 1112 (N.D. Ill. 2014) (Tharp, J.). In sum, the difference in hours and pay is material to the Court's similarly situated inquiry. Viewing the evidence and all reasonable inferences in Johnson's favor, he has not presented sufficient evidence to raise a genuine

issue of material fact in relation to his prima facie case of age discrimination.  The Court grants
Statewide's summary judgment motion based on this deficiency.

In the alternative, even if Johnson had adequately set forth a prima facie case of age
discrimination, he has not presented evidence raising a triable issue of fact that Statewide's proffered
reason for his termination was pretext for discrimination.  To show pretext, Johnson must come
forward with evidence that (1) Statewide's reason for his termination was dishonest, and (2)
Statewide's true reason was based on discriminatory intent.  *Logan v. City of Chicago*, 4 F.4th 529, 537
(7th Cir. 2021).  Pretext is more than faulty reasoning or bad judgment – it is a lie or a phony reason.
*See Brooks*, 39 F.4th at 435; *Barnes v. Board of Trs. of Univ. Ill.*, 946 F.3d 384, 389 (7th Cir. 2020).  Also,
under the first requirement, "the question is not whether the employer's stated reason was
inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain
the discharge." *Robertson v. Dept. of Health Servs.*, 949 F.3d 371, 380 (7th Cir. 2020) (citations
omitted).

As stated, Statewide explains it terminated Johnson's employment because it had eliminated
the position of supervisor at the Campbell location in February 2019.  In support of its reason for
Johnson's termination, Statewide provides the deposition testimony of Statewide's Director of
Operations Michael Barone.  Statewide also presents other evidence that it considered Johnson a
supervisor, including its unrefuted payroll and employee pay reports for the relevant time period that
indicate Johnson was a supervisor until his termination.  And, as discussed, there is undisputed
evidence in the record that the other security officers at the Campbell location made less per hour
than Johnson.  Barone also averred that he introduced Johnson to the Campbell location client as
the supervisor told other security guards that they reported to Johnson.

Nevertheless, Johnson testified at his deposition Barone told him in 2017 that he was no
longer a supervisor.  At this stage of the proceedings, the Court must view the evidence and all

reasonable inferences in Johnson's favor, and thus Johnson's testimony raises a triable fact that he was not a supervisor at the time of his termination underscoring his argument that Statewide's reason for his discharge was dishonest.

Next, Johnson must present evidence raising a genuine issue of triable fact that Statewide's true reason for his termination was his age, which he has failed to do. *See Logan,* 4 F.4th at 537. Specifically, to show Statewide's beliefs are not credible, Johnson must "provide evidence that he was fired for reasons other than those provided, the reasons had no grounding in fact, or were insufficient to warrant termination." *Castetter v. Dolgencorp, LLC,* 953 F.3d 994, 997 (7th Cir. 2020). In support of his argument, Johnson contends Barone made several ageist comments directed at him. Such remarks can raise an inference of discriminatory intent if they are made by the decision-maker, around the time of the decision, and in reference to the adverse employment action. *Brooks,* 39 F.4th at 439. "When considering whether a remark is discriminatory, [courts] also consider the context in which the remark was made." *Bagwe v. Sedgwick Claims Mgmt. Serv., Inc.,* 811 F.3d 866, 885 (7th Cir. 2016). The parties do not dispute that Barone was the decision-maker in relation to Johnson's termination.

According to Johnson, in April 2017, when he and Barone were dining at a restaurant, Barone asked him how old he was and how much longer he wanted to work at Statewide, to which Johnson answered that he wanted to work for a few more years. Another time when they were out to eat in September 2017, Barone asked Johnson "you're getting on in age now, how much longer are you going to put up with this shit?" Not only were these comments made outside of the workplace and in a social setting, but the timing of these 2017 statements is too temporally attenuated from Johnson's termination in February 2019. Equally important, these comments were not made in connection with Johnson's termination, but were in relation to how long Johnson wanted to work for Statewide. Accordingly, these 2017 comments are not probative of unlawful

discriminatory intent in relation to Statewide's employment decision and do not defeat summary

judgment. *See Castetter,* 953 F.3d at 997 ("isolated comments must be contemporaneous with

termination or causally related to the termination process in order to be probative of

discrimination.").

Next, at his deposition and in response to Statewide's interrogatories, Johnson stated Barone

called him an "old man" from time to time. Johnson does not point to the specific timing of these

statements, although in his later-filed declaration, Johnson avers that Barone called him an old man

up until February 2019. What Johnson does not aver is whether this statement was made in

connection with his termination or in what context Barone allegedly made this statement. For

example, did Barone make this statement in a social setting like his 2017 comments or did he make

them at work? Because the details of Barone's alleged 2019 statement(s) are unclear, they do not

constitute adequate evidence that Statewide terminated Johnson due to his age. *See Ptasznik v. St.*

*Joseph Hosp.,* 464 F.3d 691, 695 (7th Cir. 2006). The Court grants Statewide's summary judgment

motion based on Johnson's failure to establish pretext.

**Conclusion**

The Court grants defendant's summary judgment motion [84]. Civil case terminated.

IT IS SO ORDERED.

Date: 9/19/2022

Entered:

SHARON JOHNSON COLEMAN
United States District Judge

ILND 450 (Rev. 04/29/2016) Judgment in a Civil Action

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
### NORTHERN DISTRICT OF ILLINOIS

Harold Johnson,

Plaintiff(s),

v.

Statewide Investigative Services, Inc. ,

Defendant(s).

Case No.  20 cv 1514
Judge Sharon Johnson Coleman

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐  in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒  in favor of defendant(s) Statewide Investigative Services, Inc.
and against plaintiff(s) Harold Johnson.

.

Defendant(s) shall recover costs from plaintiff(s).

---

☐  other:

---

This action was *(check one)*:

☐ tried by a jury with Judge          presiding, and the jury has rendered a verdict.
☐ tried by Judge          without a jury and the above decision was reached.
☒ decided by Judge Coleman on a motion for summary judgment.

Date:  9/19/2022

Thomas G. Bruton, Clerk of Court

Yvette Montanez , Deputy Clerk

APP. 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-1514 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| STATEWIDE INVESTIGATIVE | ) | |
| SERVICES, INC,, | ) | Magistrate Judge Sunil R. Harjani |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, HAROLD JOHNSON, by and through his attorneys, Barry A. Gomberg and Luanne M. Galovich of Barry A. Gomberg & Associates, Ltd., and hereby submits Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

## I. INTRODUCTION[1]

Harold Johnson is the victim of age discrimination. He was approximately 77 years old when his employer summarily fired him. In a desperate effort to cover up its discriminatory actions, Defendant claimed that it was merely eliminating Johnson's position as a "supervisor." But Johnson was not a supervisor at the time of his termination. In 2017, Defendant demoted Johnson to a guard and took away his two weeks of vacation.

As this Court is now aware, Defendant claims that because Johnson still wore a white shirt, earned a mere $1 more than other guards at the Chamberlain School of Nursing ("Campbell Client Location"), and had a social media page that still contained a reference to being a "Chief Security Guard" at Defendant, that this must mean that Johnson was a supervisor. However, Johnson provides an abundance of evidence to refute Defendant's claims, including, but not limited to the fact, that Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told him in 2017 that he was no longer a supervisor, allowed Johnson to continue wearing a white shirt rather than go to the expense of buying blue shirts, and called Johnson "Old Man", questioned him about the future length of his tenure at Defendant and telling Johnson that he was "getting up in age." Additionally, there is evidence that within mere weeks of Johnson's termination, Defendant hired younger guards to work at the location that Johnson was working at when he was terminated.

---

[1] Factual citations will be as follows: Citations to Plaintiff's Statement of Additional Facts will be made as "Pl. SOF ___." Citations to Defendant's Statement of Facts will be made as "Def. SOF ____." Citations to Plaintiff's Response to Defendant's Statement of Facts will be made as "Resp. to Def. SOF."

Further, Plaintiff testified that he performed the same duties as the regular guards both before and after his demotion in 2017. In fact, while referred to as a supervisor prior to his 2017 demotion, Johnson never performed tasks that the regular guards did not perform.

There are many material facts in dispute in this matter and, therefore, Summary Judgment should be denied. Said disputed material facts include without limitation the following:

- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor referred to Hal Johnson as "Old Man"
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that he was "getting up in age"
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that it was time for him to retire
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that he would no longer be a supervisor but would become a regular guard as of 2017
- Whether Mike Barone, Defendant's Director of Operations and Johnson's supervisor, told Hal Johnson that he could continue to wear his white shirt after he was made a regular guard in 2017
- Whether Hal Johnson's duties from 2017 through the time of his termination were those of a regular security guard
- Whether Hal Johnson was the "liaison" with the client at the Campbell Client Location
- Whether Hal Johnson was responsible for training guards at the Campbell Client Location
- Whether Hal Johnson updated his Facebook page after he was made a regular guard at Defendant in 2017
- Whether Hal Johnson was terminated on February 4, 2019 because of his age
- Whether Defendant's discriminatory conduct towards Hal Johnson was intentional and/or in reckless disregard for Johnson's rights under the law
- Whether Defendant's discriminatory conduct towards Hal Johnson constituted willful indifference to Hal Johnson's rights.

For these reasons, and all the reasons set forth herein, it is strongly demonstrated, with respect, that this Honorable Court should deny Defendant's Motion for Summary Judgment.

## II.     STATEMENTS OF FACT

In 2017, Defendant restructured its Campbell Client Location. (Pl. SOF ¶8). At that time, Defendant took away Johnson's two-week vacation. (Pl. SOF ¶8). Johnson was told by his

supervisor, Mike Barone, that he was being demoted from his supervisor position to that of a regular guard.  (Pl. SOF ¶35)

Johnson testified that all the former and current Chicago Police Officers who worked security at the Campbell Client Location had the same duties and responsibilities. (Pl. SOF ¶9) Even when he was a supervisor, Johnson had the same duties and responsibilities as the other guards, and no additional duties. (Pl. SOF ¶9). Barone admitted in his deposition that Johnson performed the duties of a security guard. (Pl. SOF ¶9). Barone could not recall during his deposition how much extra time Johnson allegedly spent during his regular work-day doing supervisory activities. (Pl. SOF ¶9)

Mike Barone knew approximately how old Hal Johnson was when he terminated him. (Pl. SOF ¶1) Barone admitted that work performance was not the reason for Johnson's termination.  (Pl. SOF ¶36) Hal Johnson was terminated on February 4, 2019. (Resp. to Def. SOF ¶10) He was 77 years old at the time of his termination.  (Pl. SOF ¶37) Johnson asked Barone if he could remain working as a guard, even if he was transferred to a different location or went part-time, but Barone refused to permit Johnson to remain in Defendant's employ. (Pl. SOF ¶38)

On February 18, 2019, approximately 14 days after Johnson was terminated, Joseph Arroyo submitted an employment application with Defendant and was hired to work as a security guard at the same location (Campbell Client Location) Johnson was working on his termination date. (Pl. SOF ¶3) Mr. Arroyo was an active Chicago Police Officer.  (Pl. SOF ¶3) Mr. Arroyo was born in 1978 and was approximately 41 years old when he was hired.  (Pl. SOF ¶3)

On February 19, 2019, approximately 14 days after Johnson was terminated, Samantha Lacina submitted an employment application with Defendant and was hired to work as a security

guard at the same location (Campbell Client Location) Johnson was working on his termination date. (Pl. SOF ¶4) Ms. Lacina was a current Chicago Police Officer.  (Pl. SOF ¶4)   Ms. Lacina was born in 1989 and was approximately 30 years old when she was hired.  (Pl. SOF ¶4)

On March 7, 2019, approximately 4 weeks after Johnson was terminated, Jacklyn Jiminez submitted an employment application with Defendant and was hired to work as a security guard at the same location (Campbell Client Location) Johnson was working on his termination date. (Pl. SOF ¶5)  Ms. Jiminez was a current Chicago Police Officer.  (Pl. SOF ¶5)  Ms. Jiminez was born in 1991 and was approximately 28 years old when she was hired.  (Pl. SOF ¶5)

On April 4, 2019, approximately 8 weeks after Johnson was terminated, Luis Kuszynski submitted an employment application with Defendant and was hired to work as a security guard at the same location (Campbell Client Location) Johnson was working on his termination date. (Pl. SOF ¶6)  Mr. Kuszynski was a retired Chicago Police Officer.  (Pl. SOF ¶6)  Mr. Kuszynski was born in 1962 and was approximately 57 years old when he was hired.  (Pl. SOF ¶6)

Plaintiff filed a Charge of Discrimination against Defendant with the Illinois Department of Human Rights on or about March 12, 2019, claiming discrimination based on age discrimination. (Pl. SOF ¶19) [2]

### III.     SUMMARY JUDGMENT STANDARDS

Summary Judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to

---

[2] Plaintiff's original Charge of Discrimination included race discrimination but, after consideration, Plaintiff chose not to pursue it in his federal lawsuit.

interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out 'an absence of evidence to support the non-moving party's case." *Id*. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a Motion for Summary Judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 54, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc*., 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a Motion for Summary Judgment, the Court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co*., 212 F.3d 969, 972 (7th Cir. 2000).

## IV.    ARGUMENT

### A.  Plaintiff Was Discriminated Against Based upon His Age

As this Honorable Court knows, the *McDonnell Douglas* burden-shifting evidentiary framework, a Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of his protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973) If the Plaintiff satisfies each element of his/her *prima facie* case of employment discrimination, the burden shifts to the

employer to articulate a legitimate, nondiscriminatory reason for the adverse job action, at which point the burden shifts back to the Plaintiff to submit evidence that the employer's proffered reason is pretext for unlawful discrimination.

### 1. Johnson Was Over 40 Years of Age at the Time of His Termination

There is no question that Hal Johnson was within the protected age group. As stated above, Johnson was 77 years of age at the time of his termination. Therefore, Plaintiff met the first prong of McDonnell Douglas.

### 2. Johnson Was Meeting the Defendant's Legitimate Expectations

Johnson was meeting the legitimate expectations of Defendant. In fact, he was more than meeting expectations. According to Mike Barone, Hal Johnson was an "exemplary employee" and there were no issues with his performance. (Pl. SOF ¶36)

### 3. Johnson Suffered an Adverse Employment Action

On February 4, 2019, Johnson was terminated from his employment by Defendant. (Def. SOF¶ 10) Even though Johnson wanted to continue his employment as a guard at Statewide, Defendant refused to permit him to do so. (Pl. SOF ¶38) As such, Johnson's termination was involuntary and adverse. As such, Johnson has also met the third prong of McDonnell Douglas.

### 4. Similarly Situated Employees Were Treated More Favorably Than Johnson

The Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), confirmed that age discrimination can occur even if the person favored is also over 40. In *O'Connor*, a 56-year-old who was fired and replaced by a 40-year-old sued under the Age Discrimination in Employment Act of 1967 ("ADEA"). The district court granted the Defendant's summary judgment motion and the Court of Appeals affirmed, holding that the Plaintiff failed to make out a prima facie case of age discrimination because he failed to show that he was replaced

by someone under the age of 40. The Supreme Court, in an opinion written by Justice Scalia, held

that an employee asserting age discrimination need not demonstrate that his replacement was under

40; rather, he must demonstrate that his replacement was "substantially younger." *O'Connor*, 517

U.S. at 312. Age discrimination can be established even if the age difference is small. *Id*.

Johnson was over the age of 40. Johnson was the oldest employee working for Defendant

at the time of his termination. (Pl. SOF ¶2). Johnson was 77 years old at the time of his termination.

(Pl. SOF ¶37) As the oldest employee of Defendant, all other employees who were not terminated

were treated more favorably than Johnson. The employees varied in age from their 20's through

their 60's. Johnson was also the only employee terminated on or about February 4, 2019. (Pl. SOF

¶¶3, 4, 5, 6)

Approximately *2 to 8 weeks* after terminating Johnson, Defendant initiated the hiring of

Joseph Arroyo (age 41), Samantha Lacina (age 30), Jacklyn Jiminez (age 28) and Luis Kuszynski

(age 57). (Pl. SOF ¶¶3, 4, 5, 6). Furthermore, not long after his termination, Johnson returned to

his former workplace and saw a new employee sitting at his former desk at the Campbell Client

Location. Said employee wore a name tag with "Johnson" on it and was much younger than

Plaintiff. (Pl. SOF ¶18)

In light of the foregoing, it would be disingenuous for Defendant to argue that Johnson did

not establish that he was treated less favorably than comparable, younger employees. Therefore,

Johnson has established the fourth prong of McDonnell Douglas.

### 5. **Defendant's Termination of Plaintiff was a Pretext for Discrimination**

As much as Defendant would like to convince this Honorable Court that it had a legitimate

business reason for terminating Johnson's employment (ie, elimination of his position), there is

sufficient evidence that a trier of fact could rely upon in determining that Defendant's alleged

reason for firing Johnson is just cover up for age discrimination.  Defendant made age animus comments to Johnson and terminated his employment while hiring significantly younger replacements.

Further, Defendant's pretextual reason for terminating Johnson hinges on a several issues of disputed material fact.  Said facts include that Johnson wore a white shirt to work during his entire tenure at Defendant; that Johnson earned $1 per hour more than other guards; that Johnson's Facebook page indicated that he was a "Chief Security Officer"; and that Johnson's evidence of discrimination is supported by "self-serving" statements.  As will be demonstrated below, Defendant's assertions are contradicted by Johnson and not proof of Johnson being a supervisor at the time of his termination.

### a.  Barone made age animus comments to Johnson

Johnson has provided testimony that his supervisor, Mike Barone, referred to him as "Old Man" several times during his employment through the date of his termination. (Pl. SOF ¶10) Barone knew approximately how old Johnson was.  (Pl. SOF ¶1).  Barone stated in his deposition that his own age was only 64 years old when he decided to terminate Johnson.  (Def. SOF ¶10). Johnson is approximately a decade older than Mike Barone.

Johnson also provided testimony that Barone told him that he was "getting on in age." (Pl. SOF ¶12) What reason would an employer make such a statement if not for the fact that an employee was getting old?  It certainly was not to save money because, at only $1 per hour which comes to $40 per week, most people would agree that such a pay differential is negligible for a supervisor.  (especially if you consider that Defendant hired an additional 4 or 5 guards who arguably replaced Johnson within weeks of his termination).  Defendant wound up spending more money on additional employees rather than less.

Additionally, Johnson has provided testimony that during his employment with Defendant, Barone asked him when he wanted to leave Statewide. (Pl. SOF ¶¶11, 12) Johnson did not want to leave. In fact, when informed by Barone that he was being let go, Johnson asked to be permitted to keep working at a different location for Defendant, if necessary. (Pl. SOF ¶38) Barone testified in his deposition that there was no reason he could identify why Mr. Johnson could not have worked as a guard in any location that Defendant had at the time they fired him. (Pl. SOF ¶39) Yet Barone terminated him anyway.

All of the foregoing ageist comments were ongoing throughout Johnson's employment with Defendant. They were not "stray remarks." Said statements indicated the real reason why Johnson was terminated and was replaced by at least four (4) new guards, all of whom were younger, some significantly younger, than Johnson.

### b. Alleged Self-Serving Statements

While the Seventh Circuit has held that it is true that uncorroborated, self-serving testimony cannot support a claim if the testimony is based on "speculation, intuition, or rumor" or is "inherently implausible," *Darchak v. City of Chicago Board of Education*, 580 F.3d 622 (7th Cir. 2009) citing to *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003), testimony based on first-hand experience is none of those things. *Id*. Johnson's testimony presents specific first-hand facts of which he has particular knowledge. Remarks coupled with an adverse employment action suffice to meet Plaintiff's burden. See *Venters v. City of Delphi*, 123 F.3d 956, 973 & n. 7 (7th Cir.1997) (citing, *inter alia, Shager v. Upjohn Co*., 913 F.2d 398, 402 (7th Cir.1990)). As a result, a reasonable jury could find Johnson's report of Barone's remarks convincing, especially coupled with the fact that Johnson's termination was an adverse employment action. Nothing more is needed to demonstrate that Johnson has established a prima facie case.

Plaintiff is permitted to rely upon his deposition statements and declaration to support his claims.[3]

If anything, it only demonstrates that there are enough material issues of fact in dispute to justify denying Defendant's Motion for Summary Judgment and setting this case for Trial.

### c. The "white" shirt

Between 2011 and 2017 Hal Johnson held the title of supervisor but his duties were the same, but no more, than any of the regular guards at Defendant. (Pl. SOF ¶9) It is also undisputed that Mr. Johnson continued to wear said "white" shirt. (Pl. SOF ¶32; Pl. Resp. to Def. SOF ¶3). Then in 2017, Mr. Johnson was informed by his supervisor, Mike Barone, that Johnson was no longer going to be a supervisor but would now be a regular guard. (Pl. SOF ¶35) Barone told Johnson that there would no longer be a supervisor at the Campbell Client Location. At the time, Johnson asked Barone if he had to purchase blue shirts for work. Barone told Johnson that it was not necessary and that Johnson could continue to wear his white shirt instead of bearing the expense for purchasing new work shirts as the white shirts were still serviceable. (Pl. SOF ¶32) Wearing a white shirt was purely to save the expense of purchasing new shirts.

The reason why Johnson continued to wear a white shirt is a disputed material fact. On this basis, it supports a denial of Summary Judgment Motion.

### d. Additional $1 Per Hour

The payroll records produced by Defendant demonstrate that Johnson was paid an additional $1 per hour than other guards. According to Defendant, this was because the payment

---

[3] The Defendant walked out of Johnson's deposition on December 4, 2020 before it concluded. They were provided at least three opportunities to reconvene the deposition, but chose not to. As a result, some of Johnson's testimony takes the form of a Declaration. (Pl. SOF ¶¶20-25)

structure changed at Chamberlain and Defendant decided to compensate Johnson with a $1 per hour pay increase because he was a "supervisor." What Defendant does not tell this Court is that it also stripped Plaintiff of his highly coveted 2-weeks of paid vacation. (Pl. SOF ¶30) In light of this, a jury could find that an additional $40 ($1 x 40 hrs) per week is so insignificant that it would not justify Johnson taking on more managerial/administrative responsibility than the other guards. Furthermore, it is Johnson's understanding that he was paid $1 more than other guards because he worked full-time hours, was a hard-worker, was reliable and had two weeks of vacation taken away from him due to the restructuring. (Pl. SOF ¶30)

Under the circumstances, a jury could find that that Defendant's alleged elimination of Johnson's position was a pretext for discrimination.

### e. Johnson's Facebook Page

Defendant also points to the fact that, even after his termination, Johnson continued to list on his Facebook (social networking) page that he was a "Chief Security Officer" at Chamberlain University College of Nursing as proof that he was a "supervisor." This statement is accurate. However, as this Honorable Court may recognize, having a social network page and actually using and updating the information contained therein on a regular basis are two different things. Hal Johnson did not visit his Facebook page as often as younger generations (or perhaps others of his own generation) and did not update his employment profile on his Facebook page in 2017 to reflect that he was a regular guard for Defendant because he does not use Facebook on a regular basis and he did not think about changing his status until he was reminded at his deposition in December 2020 that it still reflected the position he held when he first created his Facebook page. (Pl. SOF ¶16). Plaintiff has subsequently updated his Facebook profile to remove his employment as a Chief security officer at Defendant. (Pl. SOF ¶16). Keeping said page updated with current information

in his profile was even less of a priority. If one were to take a poll, especially amongst less tech savvy individuals, they may find that once the average person sets up their profile page, a user may never change the information again even if the information about themselves contained therein may have changed.

It is significant to note that Johnson's Facebook page at the time of his deposition on December 4, 2020 (nearly 2 years after he was terminated) still listed him as the current Chief Security Officer at Chamberlain. This fact actually diminishes Defendant's reliance on the information as proof that Johnson considered himself as a supervisor at the time of his termination. Rather, the only thing it tends to prove is that Johnson was inattentive and/or lazy because he did not update his information on a regular, timely basis which results in the statements made therein being considered unreliable for the reporting of current information.

Additionally, when shown a photo of his Facebook page during his deposition indicating that he was a "Chief Security Officer" at Defendant, Johnson stated that it is "not supposed to be" what his current Facebook profile says. (Pl. SOF ¶16). Johnson also asked "how old" the Facebook profile was but Defendant's counsel did not know. (Pl. SOF ¶16).

### 6. The Evidence as a Whole Permits a Reasonable Inference that Johnson's Age Caused His Termination

As this Honorable Court knows, the *McDonnell Douglas* proof paradigm is not the only method to prove age discrimination. The Seventh Circuit has made it clear that on a Defendant's Motion for Summary Judgment in an employment discrimination case, "the sole question that matters" is "[w]hether a reasonable juror could conclude that [the plaintiff] would have kept [his] job" if he did not have a protected characteristic (in this case, over the age of 40), "and everything else had remained the same." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016); *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009). In answering that question,

the Court should consider the evidence as a whole to determine whether, even if there is no direct

admission of discrimination or other piece of evidence that is overtly damning by itself, the full

evidentiary picture permits a reasonable inference that Plaintiff's age caused his discharge. *Id*;

*Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

When taken as a whole, a reasonable jury could find that Plaintiff's age was the reason

for his termination based upon the following:

- Johnson was 77 years old at the time of his termination.
- Johnson was the oldest employee of Defendant at the time of his termination.
- Johnson's supervisor, Mike Barone continually over time called Johnson "Old Man," asked Johnson about when Johnson was considering leaving Defendant, and told Johnson that he was "getting up in age."
- Johnson testified that he was demoted from a supervisor to a regular guard in 2017 when restructuring took place. Although his duties were same at all times as a regular guard.
- At the time Johnson was demoted to a guard position in 2017, Defendant took away Johnson's two weeks of vacation.
- When Johnson was informed by Barone that he was being terminated on February 4, 2019, Johnson asked that he be permitted to stay on at Defendant but his request was denied.
- Not long after his termination, Johnson returned to his former workplace and saw a new employee sitting at his former desk at the Campbell Client Location. Said employee was much younger than Plaintiff.
- Defendant hired at least 4 guards at the location where Johnson had been working on the termination date: Joseph Arroyo (age 57), Samantha Lacina (age 30), Jacklyn Jiminez (age 28) and Luis Kuszynski (age 41), between 2 to 8 weeks after Johnson's termination, all of whom were significantly younger than Johnson.

Defendant claims that Johnson was terminated because the Campbell Client Location no

longer required a supervisor. However, Johnson was not a supervisor at the time of his termination.

Defendant does not claim that Johnson was a bad employee or could not do the job anymore. In

fact, according to Barone, Johnson was an exemplary employee. Johnson asked if he could remain

employed by Defendant rather than be terminated.

Defendant terminated Johnson and then shortly thereafter hires 4 new current and former

police officers at the Campbell Client Location. There were many similarities between Johnson

and the new hires. All had police experience, were weapons trained, most (if not all) were licensed to carry a firearm, and all (including Johnson) wanted to work for Defendant. The only real difference between Johnson and the new hires (besides the fact that some were female) were their ages. At 77, Johnson was 20 years older than the oldest new hire. In fact, he was approximately 50 years older than the youngest new hires.

The numerous material facts in dispute in this matter lead to the conclusion that Summary Judgment is not appropriate. A reasonable jury could find that there is sufficient evidence to find in Plaintiff's favor.

### B.    Damages

Johnson revokes his request for compensatory damages. Johnson is, however, entitled to backpay, attorney's fees and costs, and any other damages that this Honorable Court sees fit to award him. Additionally, he is entitled to liquidated damages should he prevail on his "willful" count. If this Honorable Court believes Johnson was not a supervisor at the time of his termination and that Defendant terminated him because of his age and that said action was intentional and/or in reckless disregard for Johnson's rights under the law, then these acts constitute willful indifference to said rights and Johnson should be entitled to liquidated damages.

Defendant should not be entitled to fees. Johnson did not ignore Defendant's Rule 11 letter. The matter was discussed with Magistrate Judge Harjani at an initial status and the Judge permitted discovery in this matter. Defendant answered the Complaint and did not file a Motion to Dismiss and this matter proceeded to discovery and now to Summary Judgment. Furthermore, as has been demonstrated by the sheer number of material facts in dispute, there is more than a sufficient basis for Johnson's claim that he has been discriminated against on the basis of his age. This is just

another attempt by Defendant to confuse the issues and hide the fact that it intentionally terminated

Johnson because of his age.

### <u>CONCLUSION</u>

Mr. Johnson presents a record replete with disputed issues of material fact, demonstrating that

he was subjected to discrimination based upon age discrimination.

For each of the foregoing reasons, Mr. Johnson respectfully requests that this Court deny

Defendant's Summary Judgment motion in its entirety and set the matter for Trial.

Respectfully submitted,

HAROLD JOHNSON

<u>By: /s/ Barry A. Gomberg</u>
Attorney for Plaintiff

Barry A. Gomberg
Luanne M. Galovich
Barry A. Gomberg & Assoc., Ltd.
53 West Jackson Blvd., Suite 1350
Chicago, Illinois 60604
(312) 922-0550 gomberglaw@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, I electronically filed the foregoing PLAINTIFF'S

RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

Megan Lopp Mathias
Rob Menigoz
Antonio Rodriguez
Lopp Mathias Law
1030 West Chicago Avenue
Chicago, Illinois 60642

Attorneys for Defendant

s/ Barry A. Gomberg_____
Barry A. Gomberg

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv--1514 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| STATEWIDE INVESTIGATIVE | ) | Magistrate Judge Sunil Harjani |
| SERVICES, INC. a/k/a STATEWIDE | ) | |
| GUARD, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF HAROLD JOHNSON

I, HAROLD JOHNSON, declare under oath and under penalty of perjury as follows:

1.    If I am called as a witness, I could competently testify regarding the matters set forth below, of which I have personal knowledge.

2.    I am the named Plaintiff in the above referenced matter.

3.    On December 4, 2020, I gave my deposition in the above-referenced matter.

4.    At approximately 12:00 pm, Defendant stopped the deposition to contact Magistrate Judge Harjani to discuss issues arising during the deposition.

5.    I waited at my attorney's office for approximately one hour waiting for a call from Defendant regarding the continuation of my deposition.

6.    My counsel contacted Defendant's counsel who informed him that the deposition would not be continuing that day.

7.    Defendant never selected a date for the completion of my deposition on any day thereafter.

7.1.    I asked Mike Barone if I could remain employed by Defendant instead of being terminated but he would not let me remain working for Defendant as guard at Chamberlain or any other location.

1

APP. 26

8.      I was unable to provide all relevant, material facts regarding my case and my counsel could not ask questions of me during the deposition because it was stopped by Defendant before its conclusion and no further deposition was set by Defendant.

9.      Mike Barone called me "Old Man" several times from 2017 through February 4 2019.

10.     I did not update my employment profile on my Facebook page in 2017 to reflect that I was a regular guard for Defendant because I do not use Facebook on a regular basis and I did not think about changing my status until I was reminded at my deposition in December 2020 that it still reflected the position I held when I first created my Facebook page in 2013.

11.     My Facebook page no longer reflects that I am a Chief security officer at Defendant.

12.     Chamberlain did not require that only individuals with law enforcement experience work security for them.

13.     I was paid $1 more than other guards because I worked full time hours, was a hard-worker, was reliable and had two weeks of vacation taken away from me.

14.     I did not facilitate communication and interface with the client for day to day update and changes needed.

15.     Mike Barone informed me that I did not need to purchase a blue shirt but could continue to wear my white shirt.

16.     The clients communicated directly with the Statewide office, typically Mike Barone.

17.     I did not assist with scheduling at Defendant.

Under penalties of perjury pursuant to 28 U.S.C. § 1746, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be

on information and belief and as to such matters the undersigned certifies as aforesaid that he verily
believes the same to be true.

FURTHER DECLARANT SAYETH NOT.

Date: 3/11/22

Harold Johnson

APP. 28

 1   after I was terminated.  And at the desk that I worked

 2   at was another security officer.  And his name was

 3   Johnson.

 4        Q.   Anything else?

 5        A.   When Mr. Barone terminated me, I was at home

 6   having dinner.  And he said that my job -- my job was

 7   eliminated.  And then Mr. Barone spoke with Ann Marie

 8   and she asked him why he let me go or fired me; and his

 9   response was, I am not at liberty to discuss it.

10        MR. GOMBERG:  (Inaudible.)

11   BY THE WITNESS:

12        A.   I had a -- I had a --

13        MS. MATHIAS:  What did you just say --

14             Hold on one second.

15             What did you just say, counsel?

16        THE WITNESS:  He didn't say anything.

17        MS. MATHIAS:  No.  I was asking your lawyer.  I

18   couldn't hear if it was an objection or what he said.

19        MR. GOMBERG:  Go ahead.  Answer the question.

20   BY THE WITNESS:

21        A.   I had an opportunity to have lunch with

22   Mr. Barone.  On two separate occasions this occurred.

23   The first one it was at Maggiano's restaurant in Old

24   Orchard approximately April of 2017.  And he asked me



 1   how old I was.  And then he said, You know, how long are

 2   you going to keep working doing this job.  And I said, A

 3   couple more years.  And then the other incident was at a

 4   place called City Limits Restaurant and Bar on Devon

 5   Avenue.  This might have been September of 2017.  He

 6   said -- He asked -- He asked me a question.  I'm -- I

 7   got it.  He said, You're getting on in age now, how much

 8   longer are you going to put up with this shit.  And

 9   on -- on several occasions he referred to me as old man.

10        Q.   Anything else, sir?

11        A.   And at the meeting with the -- in the State of

12   Illinois building at the fact-finding conference,

13   Mr. Barone stated that my performance at DeVry had no

14   bearing on why I was let go.  And considering that I was

15   not a supervisor anymore, why.

16        Q.   Anything else, sir?  He cannot --

17        A.   That's it.

18        Q.   -- give you the answer.

19        A.   That's it.

20        Q.   Is your counsel telling you answers right now,

21   sir?

22        A.   No.  No.  Not at all.

23        Q.   Okay.  Because twice I've heard him say

24   something while you're talking; and on multiple times

